**SOUTHERN SURETY CO. v. JONES et al.**

No. 10688—Opinion Filed May 23, 1922.

Rehearing Denied April 24, 1923.

Second Rehearing Denied July 24, 1923.

(Syllabus.)

1. **Guardian and Ward—Relationship—Effect of Death of Guardian.**

. In a guardianship proceeding the guardian is a managing agent for his ward; nobody is interested in his conduct except the ward, and his duty is primarily to account to the ward rather than to the court, and the guardianship terminates by the death of the guardian, and when the guardian dies the trust does not pass to his executor or administrator. His personal representative stands toward the ward as any third person having money or property of the ward in his possession.

2. **Pleading—Right of Defendant to Plead After Default—Discretion of Court.**

The question of permitting a defendant to plead after default is discretionary with the trial court; and its action will not be reversed unless it appears that such discretion has been abused to the manifest injury of the party complaining.

3. **Trial—Time of Trial—Effect of Pleadings After Issues Made Up.**

. When the issues have once been fully made up by the filing of pleadings or by failure to file them, the provisions of the statute, section 5043, Rev. Laws 1910, has spent its force, and thereafter any change in the issues caused by the filing of new or amended pleadings by leave of the court or consent of the parties does not, by reason of said action, necessarily work a delay of the trial.

Error from District Court, Bryan County; J. M. Crook, Judge.

Action by Lula Jones and another against the Southern Surety Company to recover on guardian's sale bond. Judgment for plaintiffs, and defendant brings error. Affirmed.

Hatchett & Ferguson, Stanard & Ennis, and M. L. Hankins. or plaintiff in error.

Hatchett & Semple, for defendants in error.

JOHNSON, J. On October 20, 1919, the plaintiffs, Lula Jones and Luella Jones, minors, by their legal guardian, Virginia Jones, commenced an action in the district court of Bryan county, against the Southern Surety Company, a corporation, to recover the sum of $784.30 on a guardian sales bond alleged to have been executed by the defendant as surety for Osborne Jones, as guardian of the plaintiffs, Lula Jones and Luella Jones. in the county court of Bryan county, in cause No. 1071. The case was tried to the court on October 20. 1919. The court rendered a judgment against the defendant in the sum of $740.80, with interest thereon at the rate of six per cent. per annum until paid.

Defendant filed a timely motion for a new trial, which was overruled by the court, and the defendant thereafter commenced this proceeding in error to reverse said judgment.

For convenience, the parties will hereinafter be referred to as plaintiffs and defendant, respectively, as they appeared in the trial court.

The defendant has assigned 16 specifications of error in its petition in error, which have been presented and argued under five propositions, which are as follows:

"(1) The guardian upon whose bond this suit was filed having died without making a final settlement of his guardianship affairs in the county court, the district court was without jurisdiction or authority to render judgment against the surety, except upon

an accounting being first had of the guardianship matters in the district court in said action.

"(2) In a suit against the surety on the bond of a deceased guardian where no final accounting or settlement of the guardianship affairs has been had during the lifetime of the guardian, the petition is demurrable unless the same is one in accounting.

"(3) Where a guardian dies, without having made a final settlement of his guardianship affairs in the county court, the personal representative or heirs of the deceased guardian are necessary parties in an action in the district court against the surety upon the deceased guardian's bond.

"(4) Where a summons has been regularly issued, and the sheriff's return shows an alleged service thereof, and the defendant having filed a special appearance and motion to quash such service, the court clerk is without jurisdiction or power to issue an alias summons except upon order of the court, and such alias summons is void.

"(5) It is error for a district court to force a defendant over its protest and objection, to trial until ten days after the issues in said case have been made up."

A brief summary of the allegations and averments in the plaintiffs' amended petition and the testimony in support thereof, shows that on the 13th day of October, 1908, Osborne Jones, now deceased, who was the father of the plaintiffs, Lula Jones and Luella Jones, procured letters of guardianship for said minors in the county court of Bryan county, in cause No. 1071, and assumed possession of the personal and real property of the plaintiffs, and thereafter sold certain lands inventoried as property belonging to the plaintiffs' estate, and received therefor the sum of $820, and thereafter, on the 10th day of November, 1909, he filed in the county court in said cause an annual report showing that he had expended from the proceeds of the sale of said land the sum of $310.70, leaving a balance due the plaintiffs of $508.30, and that thereafter in the month of February, 1915, and before the expenditure of any further sum chargeable to these plaintiffs, the said Osborne Jones died without having accounted for, or otherwise paid over to these plaintiffs, the said money, upon which amount the plaintiffs seek to recover interest at the rate of 6 per cent. per annum from said November 10, 1909, alleging that no part of the principal and interest had ever been

paid them; and further alleging that before concluding the sale of said land as such guardian the bond sued upon was executed, and that the defendant signed the same as surety, and the same was approved by the court and filed in said cause No. 1071.

The defendant filed an answer and cross-petition containing general and specific denials, and thereafter and therein alleged, in substance, that at the time of the death of the said Osborne Jones, in February, 1915, the guardianship proceeding in cause No. 1071 was still pending, and that no final report or account of said guardianship had been made or final order or decree had been made, and that by reason thereof no suit could be brought in the court to settle said guardianship account; and further alleged that after the death of Osborne Jones, one Gray Nickels was appointed administrator of the estate of Osborne Jones, deceased, by the county court of Bryan county, filed on July 16, 1915, in probate case No. 1730, and immediately thereafter took charge of all the estate of the said Osborne Jones, deceased, and proceeded to administer upon and dispose of said estate as required by law, and that the inventory of said estate showed that such estate consisted of 220 acres of land, the equity in which was valued at $3,200, and personal property of the value of $2,743, besides the sum of $61.67 in small notes; that such administrator proceeded to close said estate without having filed and settled the final account of the said Osborne Jones as guardian of the plaintiffs, and without said plaintiffs or their legal guardian having filed with such administrator their claim against the estate for the amount of the liability sued for herein, alleging that upon the death of the said Osborne Jones the whole of his property descended to his heirs subject to the payment of his debts, and that said property was subject to the payment of his debts, and that if said deceased was indebted to plaintiffs as alleged, he left ample property with which to pay same, and that plaintiffs were entitled to have the debts sued for herein, if any existed, paid out of such estate before any portion thereof should be expended in other matters; and that the plaintiffs failed to present their claim to the administrator, and that on the application of the plaintiffs and their legal guardian the said administrator paid the money in his hands, amounting approximately to $2,743, to said plaintiffs and the widow and other children of said deceased, for the purchase of groceries, dry goods, schooling expenses, and other necessities of living, and that said

plaintiffs and the widow of said deceased and the other children received the full benefit thereof; that in addition thereto there was delivered to the plaintiffs and the other heirs of said deceased a large acreage of fertile and valuable land, which said plaintiffs received as heirs at law of said Osborne Jones, deceased, and which said property was subject to the payment of any debts which the said Osborne Jones might owe, including said alleged claim sued for in this action, and that said property so recovered by the plaintiffs and other heirs exceeded in value many times the alleged claim which the plaintiffs sued for in this action.

As a cross-petition and counterclaim the defendant alleges that in the event the bond sued upon in this action be found to be a lawful, legal, and binding obligation, and if defendant is in any amount indebted to the plaintiffs, then, it alleges, there is due and owing it from the plaintiffs as unpaid premiums on said bond the sum of $74, an itemized statement of which was attached to said cross-petition marked Exhibit "A"; and prays that judgment in said sum with interest thereon be offset against any amount found due the plaintiffs.

The plaintiffs filed a reply to the answer and cross-petition of the defendant, consisting of general and special denials alleging that the plaintiffs had not received money or property from the estate of the deceased guardian, Osborne Jones, in a sufficient amount to cover the defalcation sued for in this action, or any other sum, but alleging that the estate of said Osborne Jones was insolvent at the time of his death; that they were under no obligation or duty to present any claim to the administrator of the estate of said Osborne Jones, deceased, and that if plaintiffs did receive any property from said estate as his heirs, the same would not be a defense to this action; and denied the allegations in the answer and cross-petition and counterclaim and made a part of defendant's answer, in which they alleged that they or no one else was liable for any premiums on the bond after the death of said Osborne Jones, and prayed that defendant take nothing by its cross-petition and counterclaim.

On the 20th day of March, 1919, the defendant filed its motion to make the widow and other children than plaintiffs of Osborne Jones parties to this action, to wit, Virginia Jones, widow, Silas Jones, Corrine Jones, Eddie Jones, and Kathleen Jones, alleging that they all resided in Bryan county, and that they with the plaintiffs constituted all of the heirs of Osborne Jones, deceased, alleging that by reason of the facts alleged they were necessary parties; which motion was overruled by the trial court and exceptions saved by the defendant.

Plaintiff in error's first, second, and third specifications argued in the brief raise but one question of law, which is, the authority of the district court to hear and determine an action against the surety in the instant case, where an accounting had not been previously had, and it cites in support of such contention the decisions of this court in the cases of Donnell et al. v. Dansby et al., 58 Okla. 165, 159 Pac. 317; Title Guaranty & Surety Co. v. Burton, 67 Okla. 320, 170 Pac. 1170; Asher v. Stull et al., 61 Okla. 320, 160 Pac. 608; Southern Surety Co. v. Hatch, 81 Okla. 36, 196 Pac. 542; Pennington et al. v. Newman et al., 36 Okla. 594, 129 Pac. 693; 9 R. C. L. 92-94.

The exact contention of defendant, as we understand it, is that the trial court was without jurisdiction or authority to render judgment against the surety except after an accounting be first had in the guardianship matter in the district court, which, in effect, is that a suit cannot be maintained in the district court against surties on a guardian's bond until there has been an accounting; that there must be a suit first for an accounting, and after such suit is determined and settled, suit must be instituted in the district court against the bondsmen; meaning that two suits are necessary to accomplish what should be accomplished in one suit.

We cannot agree with counsel in their contention, or that the cases cited support such contention. We think the contrary is true in both instances.

In the case of Donnell et al. v. Dansby, supra, the question here raised by the defendant's first, second, and third propositions was there involved. The syllabus of that case is as follows.

"(1) A joint action may be maintained on a guardian's bond by or on behalf of two wards for an accounting and settlement where they have a joint interest in the fund or property for which the guardian has failed to account.

"(2) Where the guardian dies without an accounting and settlement of his affairs as guardian having been made in the county court, his former wards may maintain an action in the superior or district court against his personal representatives and the sureties on his bond as guardian for such accounting and settlement.

"(3) In such action the court had jurisdiction to state the account of the deceased

guardian with his wards and may hear evidence and allow defendants any credits to which the deceased was lawfully entitled, and may determine the balance due, if any, by said guardian and render judgment against the sureties therefor.

"(4) It is not necessary that a claim for a fund wrongfully misappropriated by a guardian be presented to the administrator of such guardian before an action for the recovery thereof can be maintained.

"(5) The surety upon a guardian's sale bond, where property has been sold by such guardian and the proceeds squandered, will not be permitted in an action on the bond to deny the validity of the guardian's appointment or of the proceedings resulting in the sale, nor to deny that he received the proceeds of said sale in his fiduciary capacity.

"(7) A father who was appointed guardian of his minor children is entitled to their custody, services, and earnings, and is charged with the duty of supporting and educating them in a manner suitable to their circumstances; and, when he cannot reasonably afford to support and educate them and they possess property the income of which will do so, he may, under the direction of the county court, apply such income to the support and education of such minor children.

"(8) Where a father who had been appointed guardian of his minor children made no charge against them for moneys expended in their behalf, and obtained no authority of the county court to expend moneys belonging to them, no credits can be allowed therefor after his death in an action against the sureties upon his bond."

In the body of the opinion, Hardy, J., speaking for the court, said:

"When the guardian petitioned the county court for an order permitting him to sell the lands of his wards, and obtained an order directing a sale thereof and requiring him to give a bond before making such sale, and the Southern Surety Company became surety thereon and said lands were thereafter sold and the guardian received the proceeds thereof, for which he failed to account, the surety will not be permitted to question the validity of his appointment or the proceedings resulting in the sale, nor to deny that he received the moneys arising therefrom in his fiduciary capacity, when suit is brought upon the bond to recover the amount of the guardian's default. Boudinot v. Locust et al., 55 Okla. 662, 151 Pac. 579. * * *

"The fact that the guardian had the custody and was entitled to the earnings and services of the minors, and that they had other property which is not here involved, and that no account was ever presented to the county court asking an allowance for the items now urged, justifies the conclusion that he intended to make no such charge;

and, where no such intention existed upon his part, the surety company cannot claim said items as an offset in an action upon the bond, even if such items could be allowed without an order of the county court."

The same question was decided by this court in the case of Title Guaranty & Surety Co. v. Burton, 67 Okla. 320, 170 Pac. 1170. Syllabus 2 is as follows:

"Where a guardian dies without an accounting and settlement of his affairs as guardian having been made in the county court, his former wards may maintain an action in the superior or district court against his personal representatives and the sureties on his bond as guardian for such accounting and settlement."

And in the body of the opinion, Kane, J., speaking for the court, discussed the question as follows:

"It is true that it is held in a number of states that an action at law cannot be brought on a guardian's bond against the sureties until the principal has been first called to account in some court of competent jurisdiction, and this, although he be dead, in which case it is the function of his personal representative to account. Connelly v. Weatherly, 33 Ark. 658; Perkins v. Stimmel, 114 N. Y. 359, 21 N. E. 279, 11 Am. St. Rep. 659; Tudhope v. Potts, 91 Mich. 490, 51 N. W. 1110. But in the states which hold as we do, that where a guardian dies without an accounting and settlement of his affairs as guardian having been made in the county court, his ward may maintain an action in the district court against the sureties on his official bond, it is uniformly held that such settlement and accounting can be had only in a court possessing the powers and jurisdiction of a court of equity, by a proceeding against the executors and other necessary parties. The authority of the executor or personal representative of the deceased guardian to make such settlement is denied upon the ground that the presentation of such account is no part of the duties involved in the administration of the estate of the deceased guardian, for although the property which was under his control as guardian may have come into the hands of his executor, yet the guardianship was a personal trust, which did not pass to him on the death of the guardian, and the property held by him as guardian did not become assets in his hands to be administered; he merely holds it for its preservation until the persons whose estate it is, and for whose benefit it is held, can obtain a settlement of the trust, terminated by the death of the guardian, in the proper forum, where the rights of all parties may be definitely determined. Donnell et al. v. Dansby et al., supra; Mitchell v. Kelly, 82 Kan. 1, 107 Pac. 782, 136 Am. St. Rep. 97; In the Matter of the Guardianship of Algier et al. 65 Cal. 228. 3 Pac. 849; Reither, Adm'r, etc., v. Murdock et al., 135 Cal.

197, 67 Pac. 784; Zurfluth v. Smith, Adm'r. 135 Cal. 644, 67 Pac. 1089. If the executor or personal representative of a deceased guardian is not authorized to settle his guardianship account in the county court, it would seem to follow that such action on the part of his wife, who was neither executor nor administrator of the deceased, nor guardian of the property of the ward, would be wholly futile."

Again, in this court, in the case of Southern Surety Co. v. Hatch, 81 Okla. 36, 196 Pac. 542, the holding was the same, citing the foregoing cases with approval, as well as the cases of Mitchell v. Kelly, 82 Kan. 1, 107 Pac. 782, 136 Am. St. Rep. 97; In the Matter of the Guardianship of Allgier et al., 65 Cal. 228, 3 Pac. 849; Reither, Adm'r, etc., v. Murdock et al., 135 Cal. 197, 67 Pac. 784; Zurfluh v. Smith, Adm'r, 135 Cal. 644, 67 Pac. 1089.

Defendant's 4th proposition is, in substance, that the court erred in overruling defendant's motion to quash the summons; and the 5th, that the court erred in overruling the defendant's protest against going to trial, for the alleged reason that the issues had not been joined ten days.

The record discloses that plaintiffs filed their petition on the 24th day of October, 1918, and filed a praecipe for summons on October 29, 1918, and that summons was issued thereon by the clerk of said date directed to the sheriff of Bryan county, commanding him to notify the Southern Surety Company, a corporation, which was returned by the sheriff, the return showing that he had executed the same by delivering copy of summons to S. A. Whale, October 31, 1918, and that thereafter, on the 27th day of November, 1918, the defendant filed its motion to quash the summons because the same was not issued, served, and returned as required by law, was not served upon any person having authority to receive service, and was not served in the time and manner prescribed by the statutes of the state of Oklahoma; that thereafter, on the 18th day of January, 1919, the plaintiffs filed their first amended petition, with Exhibits A, B, and C, thereto attached; that thereafter, on January 18, 1919, plaintiff filed a praecipe for summons against the defendant surety company, a corporation, incorporated under the laws of the state of Iowa, to be directed to the sheriff of Oklahoma county; that an alias summons was issued on said date, and that a return was indorsed thereon by the sheriff of Oklahoma county, showing that the same had been executed by delivering a true copy of the summons to A. L. Welch, Insurance Commissioner of the state of Ok-

lahoma, on January 21, 1919; that thereafter, on the 17th day of February, 1919, the defendant filed a motion to quash the said alias summons and service because the same was not issued, served, and returned as required by law, and because the same was not served upon any person having authority to receive service, because same was not served in the time and manner as required by law; that thereafter, on the 3rd day of March, 1919, the court overruled the motion to quash the alias summons, and on the same date ordered that the defendant be given ten days in which to answer, and the cause was set for trial on March 20, 1919; and that thereafter, on the 12th day of March, 1919, the defendant filed a demurrer to the plaintiff's amended petition and an answer and cross-petition, and thereafter, on the 20th day of March, 1919, the demurrer was heard and overruled, to which motion overruling the demurrer the defendant saved an exception.

The defendant, however, had filed an answer and cross-petition on the 12th day of March, 1919, the day it filed its demurrer, and the plaintiffs filed a reply thereto on the 20th day of March, 1919, on the same day the defendant filed a motion to make additional parties defendants, to wit, the widow and children of Osborne Jones, deceased, which was by the court overruled on said date, to which the defendant excepted; also, on said date filed a motion to strike the cause from the trial calendar for the reason that the issues had not been made or joined as required by law, which was overruled by the court, to which action of the court the defendant excepted, and thereafter the cause proceeded to trial upon its merits on that day.

The defendant's contention is that the court erred in overruling its motion to quash the summons because the alias summons so called, was issued by the clerk without an order of the court having first been made, and that the sheriff's return on the first pretended summons did not contain the statement "not summoned," as required by section 4709, Rev. Laws 1910, which was the only condition that would authorize the clerk to issue the alias summons unless directed by the court so to do. We think this contention is without merit, for the reason that the first purported summons and the service thereof was a nullity, and was so treated and considered by all the parties, and that in the circumstances shown by the record the so-called alias summons was in no sense an alias summons, but was the original summons in the case, and that the issuance thereof in the manner the same was

shown to have been issued was fully authorized under section 4709, providing that when the summons is returned by the sheriff "not summoned," "other writs may be issued, until the defendant or defendants shall be summoned," as well as the other provisions of the law requiring that where the defendant is a nonresident insurance company, service of summons must be had upon the State Insurance Commissioner.

The defendant's 5th and last proposition argued in its brief is that the court erred in forcing the defendant to trial over its protest and objection until ten days after the issues of said cause had been made up.

It appears from the record in this case that on the 3rd day of March, 1919, the defendant was present by counsel in court and on that date the court overruled the defendant's motion to quash the summons. The answer date designated in the summons expired on the 17th day of February, 1919. Therefore, the motion of the defendant to quash the summons having been overruled by the court, and it thereby being determined that the defendant had been legally summoned to answer in the action, the defendant was in default of an answer, as provided by section 4756, Rev. Laws 1910. The defendant then being in default of an answer, it was within the discretionary power of the court to fix a reasonable time within which the defendant would be permitted to answer.

Section 4757, Rev. Laws 1910, provides:

"The court, or any judge thereof, in vacation, may, in his discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this article, or by an order enlarge such time."

The court thereupon entered an order granting the defendant ten days from the 3rd day of March within which to file its answer, and the cause was by the court ordered set for trial on the 20th day of March, 1919, and the defendant made no objection to the court setting the cause for trial on the 20th, and thereby impliedly consented that the cause be set for trial on said date.

The record further discloses that the defendant, on the 12th day of March, 1919, filed a demurrer and answer and cross-petition, and the cause was called for trial, both parties anounced ready for trial, except the defendant insisted that the cause was not yet at issue and for that reason the trial of the cause should not proceed.

The defendant makes no contention that it was in any way denied a full and fair opportunity to present any defense that it had to the action, or that the action of the court in proceeding with the trial of the cause in any way prejudiced the right of the defendant to defend the action. No motion was filed by the defendant for a continuance.

In these circumstances, it seems clear there was no abuse of discretion by the trial court.

There being no reversible error apparent in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and KANE, MILLER, KENNAMER, and NICHOLSON, JJ., concur.