LESLIE D. SPENCE, GUARDIAN, APPELLANT, V. HARDIN U.
MINER, SHERIFF, ET AL., APPELLEES.

FILED JUNE 13, 1911.   No. 16,418.

1. **Insane Persons**: GUARDIANSHIP: JURISDICTION. The county court
has original jurisdiction of the settlement of the accounts of
guardians of insane persons. Const., art. VI, sec. 16. And by
statute this jurisdiction is made exclusive. Comp. St. 1909, ch.
20, art. I, sec. 3.

2. ——: ——: ——. When the county court appoints a guardian
for the estate of an insane person, it is his duty to take posses-
sion of and control of that estate, and in doing so he is an officer
of the court and brings the estate under the jurisdiction of the
court.

3. ——: ——: DUTIES OF GUARDIAN. It is the duty of the guardian
to furnish the ward with the necessaries of life suitable to his
condition out of the ward's estate.

4. ——: ——: JURISDICTION. Courts of equity may determine the
equitable rights of a ward under guardianship in suits in the
nature of actions *in rem* which affect the property rights of the
ward. In personal actions to establish a claim against the estate
of the ward for necessaries furnished during the guardianship,
the county court which has taken jurisdiction of. the estate by
the appointment of the guardian has exclusive original jurisdic-
tion.

5. ——: JUDGMENT: RELIEF IN EQUITY. A personal judgment ren-
dered by a justice of the peace against an insane person under
guardianship for necessaries furnished during the guardianship,
in an action against the ward alone, the guardian having no
notice of the proceedings or that such necessaries had been
furnished, and the plaintiff having notice of the guardianship,
will be vacated in equity at the suit of the guardian, and the
sale of the ward's property upon an execution issued upon such
judgment will be enjoined.

APPEAL from the district court for Johnson county:
LEANDER M. PEMBERTON, JUDGE. *Reversed.*

*Hugh LaMaster,* for appellant.

*L. C. Chapman,* contra.

SEDGWICK, J.

In October, 1902, David Duncan was appointed guardian of the person and estate of one William I. Young, incompetent and insane, by the county court of Johnson county. Afterwards, and during the guardianship of the defendant, Charles C. Reynolds sued the said ward before a justice of the peace in Lancaster county on account for board, and recovered a judgment for $73.70 and costs. Afterwards a transcript of judgment was taken to the district court for Lancaster county, and from that court to the district court for Johnson county, and an execution issued thereon and placed in the hands of the defendant Hardin U. Miner, sheriff of Johnson county, and the sheriff was about to levy the same upon the land of the ward in Johnson county when this action was brought by this plaintiff, who is the successor of the said Duncan as guardian, to restrain the levy and sale of the land upon the said judgment. A general demurrer was filed to the petition and sustained by the district court, and, the plaintiff electing to stand upon his petition, the action was dismissed, and the plaintiff has appealed.

The petition alleges the facts above stated, and that said Charles C. Reynolds well knew that said David Duncan was, during all of said time that William I. Young was boarding with said Charles C. Reynolds, the duly and lawfully constituted guardian of the person and estate of said William I. Young, and well knew that said David Duncan was ready, willing and able, during all of said time, to furnish all necessaries required by said William I. Young, but said Reynolds never requested said David Duncan to furnish necessaries for said Young, and said David Duncan never refused to furnish any necessaries for said Young, and said Charles C. Reynolds never made any demand or request upon the said David Duncan or upon this plaintiff for pay for said necessaries alleged to have been furnished to said Young; and that in fact there was nothing due to said Reynolds on said account.

The constitution of this state provides: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlements of estates of deceased persons, appointment of guardians, and settlement of their accounts." Const., art. VI, sec. 16. The statutes are not as complete as they might be in regard to the practice of county courts in matters of guardianship, but there are several provisions that are in harmony with the above quotation from the fundamental law. When the county court appoints a guardian for the estate of an insane person, it is his duty to take possession and control of that estate, and in doing so he is an officer of the court and brings the estate under the jurisdiction of the court. The personal property and effects of the ward are subject to the control and direction of the county court.

It is the duty of the guardian to furnish the ward with the necessaries of life suitable to his condition out of the ward's estate. When necessary, the district court may authorize the sale of his real estate, but only when the condition of his estate in the custody of the county court makes such course necessary. The petition in this case alleges that the guardian had no notice that any such liabilities were being incurred against the estate of his ward, or that there was any necessity therefor, or that any suit was begun against the ward, or that any such proceedings were contemplated until after the judgment was transcripted to Johnson county.

The statutes in regard to guardianship are not uniform in the several states, and there are various holdings in regard to the force and effect of judgments and decrees against a person under guardianship. It is generally, and perhaps uniformly, held that persons under guardianship may be sued in law actions as well as in suits that are in the nature of actions *in rem* which affect the property of the ward. He should be made a party defendant in various forms of actions, in which his interests are affected. In such cases the general guardian is also usually made defendant, and if he fails to appear to defend the

ward's interest in the property, or if there is no general guardian of an insane or incompetent person, the court will appoint a guardian *ad litem* to protect his interests. Such cases are to be distinguished from personal actions upon claims against the ward arising during guardianship when the estate of the ward is in the custody of a court which is given original jurisdiction to administer the same, and the general guardian has no knowledge of the action, there being no service upon him and no guardian *ad litem* is appointed. In this state the county court is by statute given exclusive original jurisdiction of the guardianship of insane persons and others. Comp. St., ch. 20, art. I, sec. 3.

Even where that is not the case, and several courts have concurrent jurisdiction, it is generally held that the court that first takes jurisdiction of the estate has exclusive control. *Johnstone v. Fritz*, 159 Pa. St. 378, 28 Atl. 148. In that case the court, quoting from another decision, say: "The latter court has exclusive jurisdiction of the account of the guardian. It cannot be deprived of that right by a judgment obtained against him before a justice of the peace." The opinion continues with the following: "But, even had there been no statutory bar, and the jurisdiction of the two courts been originally concurrent, that of the orphans' court, having first rightfully attached, must, in pursuance of the well-settled rule, have become exclusive. The possession and management of the estate having already passed into its grasp, and both guardian and minor under its control and direction, a wise public policy would have forbidden any interference with the exercise of its jurisdiction. Those who deal with either guardian or minor must deal subject to the approval or disapproval of this one tribunal, else there will be an end of intelligent administration, and a beginning of the evils resulting from conflict of jurisdiction. If the common pleas may take cognizance of questions of allowance, it may take cognizance of the conduct of the guardian and the settlement of his accounts, for the one involves the other. This the law will not permit."

The supreme court of Illinois refused to allow a bill in equity to enforce the payment of attorney's fees for services rendered a minor under guardianship out of funds that properly belonged to the estate of the minor. That court held that, where the probate court had appointed a guardian and taken jurisdiction of the estate, no other court would interfere and adjust certain items of account against the estate. Upon this point the court said: "Moreover, under paragraph 69, ch. 37, Rev. St., probate courts are clothed with original jurisdiction in all matters of probate, the settlement of estates of deceased persons, the appointment of guardians and conservators and the settlement of their accounts. So far as the expenditure of the money in the hands of Martin Dougherty, Sr., guardian of Martin Dougherty, Jr., belonging to the ward is concerned, the probate court has full power and authority to make and enforce any necessary order. The law is well settled that a court of equity will not, except in extraordinary cases, take jurisdiction in the administration or settlement of estates. * * * It is also a well-established rule that where a court of equity assumes jurisdiction it will take the whole administration of the estate into its hands, and will not assume jurisdiction over a part." *Dougherty v. Hughes*, 165 Ill. 384.

The supreme court of California held that an action could not be maintained against the ward for legal services rendered the guardian in behalf of the ward's estate. *McKee v. Hunt*, 142 Cal. 526. The court said: "Both the administrator and the guardian are primarily liable to those whom they employ to aid them in the care, management, and protection of the estate, and the question as to the reimbursement of the administrator or guardian from the estate, for such necessary expenses as he may incur, is one solely between the administrator or guardian and the estate which he represents, and one which the court having jurisdiction of the estate has the sole power to determine."

In *Sturgis v. Sturgis*, 51 Or. 10, the law is stated in the

syllabus: "The property of the ward is in the custody of the law, and is not subject to attachment or execution, and the estate is administered under the direction of the county court; the powers and duties of the guardian in the management of the estate and payment of debts being specified in the statute."

In *Nolan v. Garrison*, 156 Mich. 397, the supreme court of Michigan, quoting from the opinion of Judge Cooley in a former case, said: "Complete jurisdiction over these subjects is conferred upon the courts of probate, and, if the interposition of equity is demanded, it must be for some purpose auxiliary to relief being sought in those courts. * * * But we think the circuit judge was entirely right in holding that whatever jurisdiction the court of chancery formerly had of these subjects is now conferred by our law upon the courts of probate. And we have no doubt that jurisdiction in those courts was meant to be exclusive, except as the court of chancery in exceptional cases might render them aid and assistance by means of such auxiliary remedies as might be needful to prevent wrong and injustice before the probate jurisdiction could be rendered effectual." In *Godde v. Marvin*, 142 Mich. 518, a bill in chancery was filed to vacate a judgment rendered against an insane person under guardianship. In the opinion the court states the general principle involved as follows: "It was conceded upon the argument that equity has jurisdiction of a suit of this character, and that the sole question for our determination was whether such injustice had been done as to authorize a court of equity to set aside the judgment of the court of law. 'It is well understood that before a chancery court will interfere with a judgment at law it must be made very clearly to appear that an injustice has been done,'" and concludes: "A decree will be entered vacating the judgment in that suit as to Richard D. Gregory, and avoiding all proceedings thereunder, or in enforcement thereof, as against him or his estate."

In that case the judgment vacated was upon a note

executed by the ward several years before he became insane and was placed under guardianship, whereas in the case at bar the judgment was for alleged necessaries furnished to the ward while under guardianship, and furnished by one who knew of the guardianship. The petition demurred to alleges that these necessaries had been fully paid for before the action was begun. There can, of course, be no doubt that under such circumstances the judgment against the ward was unjust. It was obtained in fraud of the right of the guardian to have notice and defend against it. The fact of the guardianship and the exclusive jurisdiction of the county court to adjust such claims would have been a complete defense if brought to the attention of the justice. There is no remedy for this plaintiff in the justice court nor by appeal. The demurrer to the petition should be overruled.

The judgment of the district court is reversed and the cause remanded for further proceedings.

                                        REVERSED.

ROSE, J., concurs in conclusion.


ROOT, J.

I concur in the conclusion of, but not in all that is said in, the majority opinion. Especially do I dissent from those parts of the opinion holding that the appointment of a guardian for an adult incompetent by a county court vests that court with exclusive original jurisdiction to determine claims against the ward's estate. At common law an incompetent might be sued after inquisition of lunacy and the appointment of a guardian or committee. *Anonymous*, 13 Ves. Jr. (Eng.) *590; 22 Cyc. 1224; *Van Horn v. Hann*, 39 N. J. Law, 207; *Baird v. Steadman*, 39 Fla. 40; *Ingersoll v. Harrison*, 48 Mich, 234.

The Michigan cases quoted from and commented upon in the majority opinion do not sustain that opinion.

In *Nolan v. Garrison*, 156 Mich. 397, cited in the majority opinion, the chief justice of that court speaking for

it, recognizes the right of a claimant to sustain an action in the circuit court against an insane person under guardianship, but says that the power of that court is exhausted by the rendition of the judgment, "and payment must usually be enforced by suit upon the guardian's bond." The last utterance of the Michigan court upon this subject may be found in *Love v. Merrill*, 130 N. W. (Mich.) 1123, wherein they say: "The mode of acquiring jurisdiction over the person of an insane defendant in an action at law or in a suit in equity is the mode prescribed by statute for obtaining jurisdiction over the person of a sane defendant."

In *Love v. Merrill, supra, Ingersoll v. Harrison, supra,* is cited with approval, so that the Michigan decisions not only do not sustain, but are at war with, the law announced by the majority of this court. Neither does *Sturgis v. Sturgis,* 51 Or. 10, sustain the majority opinion. Judge Eakin, writing the opinion of the Oregon court, said: "Without deciding whether an ordinary creditor of the ward's estate may, in the first instance, bring an action therefor, it appears that this is not a liability upon the contract of either the ward or the guardian; but, if there is a liability, it is statutory, and may be established *in any competent court by judgment against the ward."* (The italics are ours.) The conclusion of that court is that an ordinary judgment recovered against an incompetent under guardianship is not void, but that it can only be enforced through the county court, and not by execution against his estate.

We do not challenge the law announced in the Oregon and Michigan cases, but it does not sustain the evident drift and purport of the majority opinion. Courts of last resort quite generally hold that a judgment obtained against an insane defendant is not void and subject to collateral attack, but, if so unjust that it would be against good conscience to enforce it, equity will interfere. *Withrow v. Smithson,* 37 W. Va. 757; *Johnson v. Pomeroy,* 31 Ohio St. 247; *Pollock v. Horn,* 13 Wash. 626; *Allison v.*

*Taylor and Washburn,* 36 Ky. *87, 32 Am. Dec. 68, and monographic note of Professor Freeman, p. 70. See, also, note to *Spurlock v. Noe;* 39 L. R. A. 779 (19 Ky. Law Rep. 1321). Neither the constitution nor any statute in precise language or by fair implication prohibits any court from entertaining suits against an incompetent, whether he be under guardianship or not. The fact that the county court has exclusive jurisdiction to settle the accounts of guardians does not seem to the writer to withdraw from every other court authority to litigate and determine causes of action asserted against a ward. The claimant may submit his demand to the county court for adjudication, and ordinarily such is the better course to pursue. In the case at bar the guardian was appointed by the county court of Johnson county, and as we understand resides in that county; his ward is an adult, and seems to have been permitted to go at large and to reside for a time in Lancaster county. If while residing there the ward was supplied with the necessaries of life under such circumstances that the law should bind his estate to pay therefor, the creditor ought to be permitted to sue him in Lancaster county, if he could be summoned therein, to determine the amount of that obligation. If a guardian *ad litem* were appointed to defend, and did defend, the suit, it is not, in the writer's opinion, the function of a court of equity to vacate the judgment, unless it is made to appear that the judgment was recovered in fraud of the ward's rights.

The demurrer admitted the truth of all of the allegations of fact well pleaded in the petition; those statements are sufficient to justify the relief prayed for; but, if the defendant in this action is permitted to answer, he may traverse those allegations and by proof establish the validity of his claim in whole or in part. In that event a court of equity should make its relief conditional upon the guardian doing equity by paying the reasonable value of the necessaries furnished the ward, less any payments or just set-offs that may exist in the ward's favor.

Neither the constitution nor any statute has abrogated the principles of equity in actions like the one at bar, and, if the district court is to aid the county court in vindicating its authority, it should go no further than it would in the case of any other creditor.

REESE, C. J., and LETTON, J., concur in this dissent.