This is a proceeding in error to review the action of the district court of Osage county in rendering judgment against the plaintiff in error on the merits of the claim that was presented to the county court, according to the record, by an assignee of the First National Bank of Pawhuska, for allowance in the matter of the guardianship of an incompetent Osage allottee, No. 1180, by the name of Sadie May, No. 719 in the county court.
The record shows an application for the appointment of W.T. Leahy, made by Sadie May and B.F. Mason on the 3rd of September, 1924, asking the appointment of W.T. Leahy to manage the estate of the Osage Indian, the income from which was $15,000 a year. It appears that notice was given to the Indian agent in charge of the Osages, and that on the 7th of October, 1924, Leahy was appointed and gave a bond, with A.N. Ruble and B.F. Mason as sureties, in the sum of $20,000, and letters of guardianship as a general guardian of the person and estate of Sadie May were issued.
The next appearing is the application of H.H. Brenner, reciting various and sundry debts that had been created by the guardian, W.T. Leahy, in the way of executing promissory notes to the bank, and saying that authority to borrow $12,500 was given by the county court on the 13th of August, 1924, and reciting various transactions since, followed later by an assignment by the bank to the applicant of the claims so that he was asking for an allowance of $7,782.50, and for an order on the guardian to pay it. This application was filed on the 1st of May, 1929, and an order made setting It for hearing on the 18th of May, 1929. Service of this order was made on the guardian, Leahy, and J. George Wright, Indian agent, on the 2nd of May, 1929.
It appears that on the 18th of May, the matter came on for hearing, and the applicant, Brenner, appeared by attorneys Wilson Duncan, and the guardian appeared by Holcombe 
Lohman, and Sadie May appeared by her attorney, Frank D. McCoy, and the matter was continued for hearing until the 29th of May, 1929. In the meantime, S.W. Perkins had been substituted as the guardian in the place of W.T. Leahy, who died.
The record shows that the trial was had and the court found that $5,310 should be allowed, and ordered the guardian to pay it, and the new guardian excepted and took the matter to the district court, and the papers were filed therein and the new guardian made a motion to dismiss the entire proceeding in the district court for the want of jurisdiction in the county court to entertain the application to grant relief, and on the ground that no proper claim was presented and the facts stated were not sufficient. This was overruled and an answer was made under oath, saying that he had no knowledge of the matter and denied every allegation and demanded proof. Exception was taken to the overruling of the motion to dismiss the proceedings and it was also a motion to dismiss the appeal.
Stipulation was made as to the appointment on October 7, 1924, and the death of the guardian on the 18th of May, 1929. A great many notes were brought into evidence, some signed by W.T. Leahy as guardian, some being signed by Sadie May, after the order adjudging her incompetent, some signed by Homer May and Sadie May and W.T. Leahy as guardian of Sadie May, some signed Sadie May by W.T. Leahy, guardian and a divorce agreement between Sadie May and her husband, one signed by Homer May alone for $365, and another for $3,805 to the order of the Ruble-Leahy Cattle Company, and a mortgage on a lot of cattle, and a good deal of inquiry was made as to the relationship of Mr. Brenner to the bank, and the bank's relation to the parties, and a decree of divorce of the 4th of May, 1927, was introduced, and the attorneys in the case were used as witnesses, and findings were made by the court in favor of the estate on the merits, the court finding the bank could not recover and therefore the assignee could not.
Briefs have been filed here on behalf of plaintiff in error, the bulk of which are to the effect that the county court has jurisdiction *Page 269 
of these matters, and two cases are relied upon, namely, Evans v. Harris, 60 Okla. 27, 158 P. 898, and Cotner v. Jacobs Gro. Co., 84 Okla. 1, 202 P. 997, by the plaintiff in error from this court to establish that the county court has jurisdiction to allow an attorney's fee in the progress of administering a guardianship matter, and the second case being from Mayes county, wherein some groceries were ordered by the lower court to be paid for, and this court, under the plenary provisions of the Constitution, held that the county court had jurisdiction to make the order. However, neither of those cases seems to be decisive here. Allowances made by probate courts are generally administrative in character.
This is the case where an outsider on a lot of transactions, some of which were had with the guardian, some with the incompetent, running over a period of years, presented a claim for allowance by the county court and order on the then guardian to pay. Just whether or not the then guardian had approved what was asked for or not, the record is silent. However, before the matter came on for hearing, that guardian died, and a new one was substituted, and still, over objections, the cause proceeded.
The ancient jurisdiction of trusts and guardians and of guardian accounts was in a great many cases invested in the courts of chancery, and while the probate or statutory courts were allowed to do certain things, and our Constitution is broad in its language, it does not appear that any case that has been passed on goes the length that would be required to sustain the jurisdiction of the county court in this case, the later guardian denying the accounting and putting the claimant on proof. One of the cases that bears upon this rather closely is the case of Southern Surety Co. v. Hatch, 81 Okla. 36,196 P. 542, opinion filed March 15, 1921, wherein the guardian died without an accounting and the wards went into the equivalent of the district court for the accounting and the enforcement of their claims, based upon a settlement by the county court had after the guardian died, and after discussion of the matter, the court following the case of Title Guaranty Surety Co. v. Burton, 67 Okla. 320, 170 P. 1170, reversed the case upon the ground that the county court had no jurisdiction to make the order. See, also, Donnell v. Dansby, 58 Okla. 165, 159 P. 317.
We think, as applied to the present case, that where third parties were coming in and relying on transactions had with the incompetent before the guardianship, as well as afterwards, and also acts of the deceased guardian, that the machinery of the county court was not adapted to ascertaining the rights of the parties and entering judgments settling their rights, and that the findings of the district court on the merits here are a nullity, as well as of the county court when the matter was before it, for the lack of jurisdiction to entertain the proceeding, and the case is accordingly reversed and remanded, with directions to the district court to reverse and remand to the county court, with directions to dismiss the proceedings at the cost of the original claimant, Brenner.
LESTER, C. J., CLARK, V. C. J., and HEFNER, and CULLISON, JJ., concur. RILEY, SWINDALL, ANDREWS, and McNEILL, JJ., absent.